DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Augustus Dobbins, commenced this original action in mandamus seeking an order compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying his July 16, 2003 application for an increase in his percentage of permanent partial disability ("PPD"), and to enter an order increasing the PPD percentage to 48 percent based on the April 29, 2003 report of Dr. Lundeen.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate determined that as the non-examining physician, Dr. Weinerman accepted Dr. Lundeen's factual findings. However, Dr. Weinerman disagreed with Dr. Lundeen on how to calculate impairment under the AMA guides. Because a non-examining physician can draw his own impairment rating based upon the factual findings he accepts from the examining physician, the magistrate concluded that Dr. Weinerman's report constitutes some evidence upon which the commission can rely to deny an increase in the percentage of PPD. Therefore, the magistrate has recommended that we deny the requested writ of mandamus.
 {¶ 3} Relator filed objections to the magistrate's decision. Relator argues in his first three objections that the magistrate erred because Dr. Weinerman's opinion, and the medical findings, were improperly based on the 1997 examinations of relator by Drs. Ward and Weaver. According to relator, this was improper because the issue before the commission was relator's condition in 2003, not his condition in 1997.
 {¶ 4} However, as counsel for the commission points out, Dr. Weinerman was asked to conduct a medical file review of relator. The medical file included the 1997 examinations by Drs. Ward and Weaver. Those reports were relevant if for no other reason than to give Dr. Weinerman a more complete picture of relator's health history. In addition, as the magistrate points out, to the extent that Dr. Weinerman relied upon the 1997 reports of Drs. Ward and Weaver, that reliance only increased his assessment of relator's percentage of PPD. Therefore, such reliance worked in relator's advantage. Thus, we agree with the magistrate's determination that the commission did not abuse its discretion by relying on Dr. Weinerman's report to support its finding that relator was not entitled to an increase in his percentage of PPD, and we overrule relator's first three objections.
 {¶ 5} Relator argues in his fourth objection that the magistrate failed to address his argument that the commission's order violated Stateex rel. Noll v. Indus. Comm. (1990), 57 Ohio St.3d 203. We agree that the magistrate failed to address this argument. However, we find that the substance of relator's argument is without merit. The commission's order indicates that it is based on the report of Dr. Weinerman. As we previously determined, the magistrate correctly concluded that Dr. Weinerman's report is some evidence upon which the commission could rely to deny an increase in the percentage of PPD. The commission is not required to explain exactly how it calculates an impairment rating. Stateex rel. Combs v. Indus. Comm. (Aug. 16, 2001), Franklin App. No. 00AP-1145. Therefore, we find no violation of the principle set forth inNoll and we overrule relator's fourth objection.
 {¶ 6} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. We adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, except that we modify the conclusions of law to include our analysis of relator's argument under Noll as set forth above. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Bryant and Bowman, JJ., concur.
Bowman, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Augustus Dobbins, :
 Relator, :
v. : No. 04AP-590
The Industrial Commission of Ohio : (REGULAR CALENDAR)
and The Gellin Company, Inc., :
 Respondents. :

 MAGISTRATE'S DECISION Rendered on November 23, 2004 Stewart Jaffy Associates Co., LPA, Stewart R. Jaffy and Marc J.Jaffy, for relator.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent Industrial Commission of Ohio.
IN MANDAMUS
 {¶ 7} In this original action, relator, Augustus Dobbins, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his July 16, 2003 application for an increase in his percentage of permanent partial disability ("PPD"), and to enter an order increasing the PPD percentage to 48 percent based upon the April 29, 2003 report of Dr. Lundeen.
Findings of Fact:
 {¶ 8} 1. On April 8, 1974, relator sustained an industrial injury while employed with the Gellin Company, Inc. The industrial claim is allowed for "right knee contusion, herniated disc at L5-S1, internal derangement right knee and amputation right second toe," and is assigned claim number 74-8427.
 {¶ 9} 2. Following a December 22, 1997 hearing, a district hearing officer ("DHO") granted a four percent increase in the PPD percentage for a total of 34 percent. The DHO's order states that the reports of Drs. Weaver, Reynolds, and Ward were reviewed and evaluated. The order states that the award is based upon the report of Dr. Ward. Apparently, the DHO's order of December 22, 1997, became a final commission order.
 {¶ 10} 3. On July 16, 2003, relator filed an application for an increase in his percentage of PPD. In support, relator submitted a report dated April 29, 2003, from James E. Lundeen, Sr., M.D. Dr. Lundeen examined relator on March 28, 2003.
 {¶ 11} 4. In his report, Dr. Lundeen opined that relator has a whole person permanent partial impairment of 48 percent based upon the 5th
Edition AMA Guides. In his report, Dr. Lundeen explains his percentage calculations for his factual findings relating to the amputated toe, right knee, and lumbosacral spine:

 EXAMINATION
 Amputate right second toe: 1% WPI
 RIGHT KNEE
 Table 17-10, page 537, 5th Ed AMA Guides
 Flexion 90 degrees 4%WPI
 Extension (Flexion contracture) 15 degrees 8%WPI
 Table 17-8, page 532, 5th Ed AMA Guides
 Motor function
 Extension Grade 4 5%WPI
 Table 17-33, pages 546-547, 5th Ed AMA Guides
 Arthroscopic knee surgery 3%WPI
 three procedures.
 Right knee WPI = 20%
 LUMBAR, LUMBOSACRAL, SACRAL SPINE EXAMINATION
 Table 15-8, page 407, 5th Ed AMA Guides
 Flexion 25 degrees 5%WPI
 Extension zero degrees 7%WPI
 Table 15-9, page 409, 5th Ed AMA Guides
 Right lateral flexion 5 degrees 4%WPI
 Left lateral flexion 5 degrees 4%WPI
 Lumbar WPI = 20%
 Table 15-7, Criteria for Rating Whole Person Impairment
 Percent Due to Specific Spine Disorders to Be Used as Part
 of the ROM Method. 5th Edition AMA Guides, page 404.
 Lumbar Intervertebral disc:
 II C. Intervertebral disc severe, no surgery 7%WPI
 Lumbar WPI = 27%
 {¶ 12} 5. On September 17, 2003, J.D. Weinerman, M.D., conducted a file review at the request of the Ohio Bureau of Workers' Compensation ("bureau"). Dr. Weinerman completed his review on bureau form C-253.
 {¶ 13} The C-253 form provides space for the "physician's narrative" where the doctor is asked to give his "medical findings," "impairment determination," and "whole person impairment by body part."
 {¶ 14} In the space provided for "[m]edical findings," Dr. Weinerman wrote in part:
* * * 4/29/03 Dr. Lundeen — show[s] decreased ROM [range of motion] L-S [lumbosacral] spine decreased ROM (R) [right] knee with weakness, uses cane[.]
 {¶ 15} In the space provided for "[i]mpairment determination," Dr. Weinerman wrote:

 Amputation 2nd toe = 1% WPI
 Decreased ROM [range of motion] of L-S spine — no
 radiculopathy — most consistent with DRE II = 5-8%
 Most examiners gave 15% or more
 Decreased ROM knee Table 17-10. 8% for extension[,] 4%
 for flexion = 12%
 Cannot add to DRE [f]or weakness (Table 17-2) — can add
 3% for pain.

 {¶ 16} In the space provided for "[w]hole person impairment by body part," Dr. Weinerman wrote:

 1% + 15% + 15% = 29%
 Toe Back Knee
 {¶ 17} Comparing his calculation of 29 percent whole person impairment ("WPI") with relator's current PPD percentage of 34 percent, Dr. Weinerman concluded that the additional percentage is zero percent.
 {¶ 18} Thereafter, Dr. Weinerman lists Drs. Lundeen, Ward, and Weaver as the examining physicians of record.
 {¶ 19} 6. On September 17, 2003, the bureau mailed an order finding no increase in the percentage of PPD based upon Dr. Weinerman's report. Relator administratively appealed the bureau's order.
 {¶ 20} 7. Following a November 5, 2003 hearing, a DHO issued an order:
* * * [T]hat the injured worker does not have any percentage of permanent partial disability or increase above that previously determined; and there is no basis for an award of compensation at this time; that the application filed 07/16/2003, be denied.
This order is based upon the report(s) of Dr(s). Weinerman; Lundeen.
 {¶ 21} 8. Relator moved for reconsideration of the DHO's order pursuant to R.C. 4123.57. Following a December 22, 2003 hearing, a staff hearing officer ("SHO") issued an order:
* * * [T]hat the order of the District Hearing Officer be affirmed for the reason that it is supported by proof of record and is not contrary to law.
This order is based upon the report(s) of Dr(s). Weinerman.
 {¶ 22} 9. On June 8, 2004, relator, Augustus Dobbins, filed this mandamus action.
Conclusions of Law:
 {¶ 23} The issue is whether Dr. Weinerman's report constitutes some evidence upon which the commission can rely to deny an increase in the percentage of PPD. Finding that Dr. Weinerman's report does constitute some evidence upon which the commission can rely, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 24} A nonexamining physician must accept the factual findings of those physicians who actually examine the claimant. State ex rel. DresserIndustries, Inc., Marion Power Shovel v. Indus. Comm. (1996),73 Ohio St.3d 349. However, the nonexamining physician need not be encumbered by the conclusions predicated upon such findings. Id. Thus, a nonexamining physician can draw his own impairment rating based upon the factual findings he accepts from the examining physician. Id.
 {¶ 25} Here, Dr. Weinerman was a nonexamining physician. Dr. Lundeen was an examining physician. Under well-settled law, Dr. Weinerman had to accept Dr. Lundeen's factual findings but he need not adopt the conclusions that Dr. Lundeen drew from those factual findings.
 {¶ 26} Having accepted Dr. Lundeen's factual conclusions, Dr. Weinerman was free to render his own calculation of impairment based upon his own understanding of the AMA Guides.
 {¶ 27} A careful review of Dr. Weinerman's report shows that he accepted Dr. Lundeen's factual findings but simply disagreed with Dr. Lundeen on how to calculate impairment under the AMA Guides.
 {¶ 28} Both physicians rendered a WPI rating for three body parts: (1) the amputated toe, (2) the back (the lumbosacral spine), and (3) the right knee. Both physicians gave the amputated toe a WPI of one percent.
 {¶ 29} Dr. Weinerman gave the back a WPI of 15 percent while Dr. Lundeen gave the lumbosacral spine a WPI of 27 percent. Dr. Weinerman did not agree with Dr. Lundeen's application of the AMA Guides with respect to the lumbosacral spine. In his report, Dr. Weinerman wrote that a decreased range of motion of the lumbosacral spine with no radiculapothy is most consistent with a DRE II, which equates to a five-to-eight percent impairment. However, Dr. Weinerman noted that prior examiners had given 15 percent or more. He thus gave the back a 15 percent rating — much higher than the five-to-eight percent that his own analysis showed. This Dr. Weinerman explained his WPI calculation using Dr. Lundeen's factual findings.
 {¶ 30} Dr. Weinerman gave the right knee a WPI of 15 percent while Dr. Lundeen gave the right knee a WPI of 20 percent. In his report, Dr. Weinerman accepted that Dr. Lundeen gave an eight percent WPI for extension and a four percent WPI for flexion for a total of 12 percent. However, Dr. Weinerman disagreed with Dr. Lundeen's addition of five percent WPI. Dr. Weinerman felt that the AMA Guides permitted only an additional three percent WPI for pain. Thus, based upon differing views of the application of the AMA Guides, but using the same factual findings, Dr. Weinerman calculated the knee impairment at 15 percent while Dr. Lundeen calculated the impairment at 20 percent.
 {¶ 31} Using the Combined Values Chart, Dr. Weinerman found that the combined impairment ratings for the amputated toe, back, and knee was 29 percent — less than the 34 percent PPD rating of record. Accordingly, Dr. Weinerman concluded that Dr. Lundeen's factual findings did not warrant an increase in the percentage of PPD.
 {¶ 32} Dr. Weinerman did indicate in his report that his opinion was based upon the findings of Drs. Lundeen, Ward, and Weaver. As relator points out here, Drs. Ward and Weaver examined relator in 1997 with respect to a prior application. However, it is clear from a careful reading of Dr. Weinerman's report that he used the reports of Drs. Ward and Weaver to increase his own impairment calculation for the back to 15 percent even though he believed that only a five-to-eight percent WPI was warranted under the AMA Guides.
 {¶ 33} Based upon the above analysis, it is clear that the commission did not abuse its discretion by relying upon Dr. Weinerman's report to support its finding that relator was not entitled to an increase in his percentage of PPD.
 {¶ 34} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.